# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CA, INC. d/b/a CA TECHNOLOGIES (A BROADCOM COMPANY),<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>DST SYSTEMS, INC. n/k/a SS&C GIDS, INC. and SS&C TECHNOLOGIES HOLDINGS, INC.<br><br>　　　　Defendants. | Case No.<br><br>**Jury Trial Demanded** |

## COMPLAINT

Plaintiff CA, Inc. ("CA") brings this action to address willful acts of copyright infringement and breaches of contract that have damaged CA and generated substantial profits for Defendants DST Systems, Inc. n/k/a SS&C GIDS, Inc. ("DST") and SS&C Technologies Holdings, Inc. ("SS&C") (together, "Defendants"). CA alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action for copyright infringement, vicarious copyright infringement, and contributory copyright infringement under the laws of the United States, 17 U.S.C. §§ 1, *et seq.*, and for breach of contract and breach of the implied covenant of good faith and fair dealing.

2. Defendants have infringed CA's copyrighted software listed on Schedule A.

3. True and correct copies of CA's copyright registrations are attached as a collective in Exhibit A.

## PARTIES

4. Plaintiff CA is a Delaware corporation with its principal place of business in San Jose, California.

5. Defendant DST is a Delaware corporation with its principal place of business in Missouri. DST is a wholly owned subsidiary of Defendant SS&C.

6. Defendant SS&C is a Delaware corporation with its principal place of business in Connecticut. On or about April 16, 2018, SS&C acquired DST.

## JURISDICTION AND VENUE

7. The acts in dispute in this case violate CA's exclusive rights under the Copyright Act, 17 U.S.C. § 101 *et. seq.*

8. This Court has subject matter jurisdiction over the copyright causes of action pursuant to 28 U.S.C. §§ 1331 and 1338 because the action arises under the federal Copyright Act. *See* 17 U.S.C. § 101, *et seq*. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

9. Venue in this district is proper under 28 U.S.C. §§ 1391 and 1400 because Defendants are subject to personal jurisdiction here.

10. This Court has personal jurisdiction over Defendants because they are incorporated in Delaware.

## GENERAL ALLEGATIONS

11. This is an action for copyright infringement, vicarious copyright infringement, contributory copyright infringement, breach of contract, and breach of the implied covenant of good faith and fair dealing brought by CA against Defendants arising from Defendants' unauthorized use of CA's copyrighted software and bad faith disaster recovery testing.

12. CA creates and markets software solutions that enable its customers to plan, develop, manage, and secure applications and enterprise environments across different platforms.

13. Because it relies on its portfolio of products to distinguish it from its competitors, CA's products and technology are protected under patent, copyright, and trademark laws where available. CA also includes confidentiality clauses in its licensing agreements.

14. CA monetizes its products and technology through, among other things, product licensing, support, and maintenance. To protect its ability to monetize and market its products and technology, CA limits the permissible use of the products licensed under each licensing agreement.

15. Through Order Forms dated March 31, 2022, CA agreed to license its copyrighted software to DST through CA's authorized reseller, Sirius Computer Solutions, LLC ("Sirius"). The March 2022 Order Forms provide that DST's use of CA's software is subject to the terms and conditions of CA's then-current End User Agreement (the "2021 Foundation Agreement").

16. Section 3.1.1 of the Software Module attached to the 2021 Foundation Agreement granted DST a limited license to install and deploy CA's software "up to the Authorized Use Limitation" specified in the Transaction Document (*i.e.*, the March 2022 Order Forms). The March 2022 Order Forms in turn specified an Authorized Use Limitation of 55,000 MIPS (*i.e.*, millions of instructions per second) for the licensed CA software.

17. According to Defendants' own usage reports, DST has exceeded its Authorized Use Limitation of 55,000 MIPS by at least 49,561 MIPS consistently for more than two years.

18. Defendants have claimed that DST's use did not exceed the scope of the license because DST was permitted to use CA's software to conduct disaster recovery testing over and above the Authorized Use Limitation set forth in the March 2022 Order Forms. But the March 2022 Order Forms do not permit DST to exceed the Authorized Use Limitation to conduct disaster

recovery testing. Indeed, they do not mention disaster recovery testing at all.

19. Moreover, while Section 3.1.3 of the Software Module attached to the 2021 Foundation Agreement does allow a customer to make "a reasonable number of copies of the CA Software for disaster recovery 'cold standby', backup and archival purposes," it does not allow a customer to exceed the Authorized Use Limitation specified in a Transaction Document to do so. Indeed, in addition to the condition set forth in Section 3.1.1, Section 3.3(ii) provides that a Customer cannot "make any use of the CA Software for which it has not paid."

20. Moreover, even if DST was allowed to exceed the Authorized Use Limitation for disaster recovery purposes, DST's purported disaster recovery testing did not comply with Section 3.1.3 of the Software Module. "Cold standby" refers to a backup system that remains completely inactive and powered off until needed, only being activated when the primary system fails or during execution of a disaster recovery test. Rather than making a reasonable number of copies of the CA software for "cold standby," DST has been running the CA software on four machines every month on a regular basis for over two years, and it has exceeded its Authorized Use Limitation of 55,000 MIPS in at least 13 out of 33 months. Computers capable of accessing, using, executing, or benefiting from the CA Software are expressly subject to the requirement that the aggregate MIPS capacity shall not exceed the Authorized Use Limitation.

21. CA now brings this action to vindicate its rights under the Copyright Act and the applicable agreements.

22. Upon information and belief, Defendants continue to willfully infringe CA's copyrights by using CA's software beyond the scope of the March 2022 Order Forms and 2021 Foundation Agreement.

## COUNT 1

### Direct Copyright Infringement
### (Against DST)

23. CA realleges and incorporates by reference the foregoing allegations in this Complaint.

24. CA is the registered owner of the valid and exclusive copyrights listed in Schedule A attached to this Complaint.

25. At all relevant times, the CA Software constituted confidential business and proprietary information belonging to CA.

26. Under the March 2022 Order Forms and 2021 Foundation Agreement, DST was permitted to install and deploy CA software only up to the Authorized Use Limitation of 55,000 MIPS.

27. Defendants' own usage reports show that DST has exceeded its Authorized Use Limitation of 55,000 MIPS by at least 49,561 MIPS consistently for more than two years. Thus, DST's use of CA's software exceeded the scope of its license.

28. As a result of the foregoing activities, DST is liable to CA for copyright infringement under 17 U.S.C. § 501. CA has suffered and will continue to suffer losses that will be ascertained according to proof. Under 17 U.S.C. § 504(b), CA is entitled to recover its actual damages and any profits of Defendants that are attributable to the infringement. In the alternative, CA is entitled to statutory damages pursuant to 17 U.S.C. § 504(c).

29. CA is also entitled to injunctive relief prohibiting DST's continued infringement pursuant to 17 U.S.C. § 502. CA has no adequate remedy at law for DST's wrongful conduct because (a) CA's copyrights are unique and valuable property, and (b) DST's wrongful conduct and the resulting damage to CA are continuing.

30. On information and belief, DST's conduct has been willful within the meaning of the Copyright Act. At a minimum, on information and belief, DST has acted with willful blindness to and in reckless disregard of CA's registered copyrights.

31. CA also requests recovery of its full costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

## COUNT II

### Vicarious Copyright Infringement
### (Against SS&C)

32. CA realleges and incorporates by reference all foregoing allegations in this Complaint.

33. For more than two years, DST has exceeded the scope of the March 2022 Order Forms and 2021 Foundation Agreement and infringed CA's registered copyrights.

34. On April 16, 2018, SS&C acquired all of the outstanding stock of DST for approximately $5.1 billion in cash, plus the costs to effect the transaction. DST is now a wholly owned subsidiary of SS&C, and DST's financial results are consolidated into SS&C's financial statements.

35. SS&C had a right and ability to supervise and prevent DST's infringing conduct, yet SS&C did not stop DST from exceeding the scope of its license. Indeed, emails between the parties in March 2022 negotiating the March 2022 renewal terms included employees from both DST and SS&C. Moreover, employees from both SS&C and DST sent CA the usage reports showing DST's over-deployment of CA's software. DST continued to over-deploy CA's software after these usage reports were provided, even though CA provided notice of the infringement and SS&C responded to CA's allegations. In the correspondence exchanged between the parties

regarding the unlicensed use of CA's software prior to the filing of this lawsuit, both parties referred to DST and SS&C interchangeably.

36. SS&C has a direct financial interest in DST's infringing use of CA's copyrighted software, and benefited financially from the infringement.

37. As a result of the foregoing activities, SS&C is liable to CA for copyright infringement under 17 U.S.C. § 501. CA has suffered and will continue to suffer losses that will be ascertained according to proof. Under 17 U.S.C. § 504(b), CA is entitled to recover its actual damages and any profits of Defendants that are attributable to the infringement. In the alternative, CA is entitled to statutory damages pursuant to 17 U.S.C. § 504(c).

38. On information and belief, SS&C's conduct has been willful within the meaning of the Copyright Act. At a minimum, on information and belief, SS&C has acted with willful blindness to and in reckless disregard of CA's registered copyrights.

39. CA also requests recovery of its full costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

## COUNT III
### Contributory Copyright Infringement
### (Against SS&C)

40. CA realleges and incorporates by reference all foregoing allegations in this Complaint.

41. For more than two years, DST has exceeded the scope of the March 2022 Order Forms and 2021 Foundation Agreement and infringed CA's registered copyrights.

42. On April 16, 2018, SS&C acquired all of the outstanding stock of DST for approximately $5.1 billion in cash, plus the costs to effect the transaction. DST is now a wholly

owned subsidiary of SS&C, and DST's financial results are consolidated into SS&C's financial statements.

43. SS&C knew that DST was directly infringing and continues to directly infringe CA's software, and SS&C materially contributed to DST's infringement by supporting and encouraging DST's unlicensed use.

44. Emails between the parties in March 2022 negotiating the March 2022 renewal terms included employees from both DST and SS&C. Moreover, employees from both SS&C and DST sent CA the usage reports showing DST's over-deployment of CA's software. DST continued to over-deploy CA's software after these usage reports were provided, even though CA provided notice of the infringement and SS&C responded to CA's allegations. In the correspondence exchanged between the parties regarding the unlicensed use of CA's software prior to the filing of this lawsuit, both parties referred to DST and SS&C interchangeably.

45. As a result of the foregoing activities, SS&C is liable to CA for copyright infringement under 17 U.S.C. § 501. CA has suffered and will continue to suffer losses that will be ascertained according to proof. Under 17 U.S.C. § 504(b), CA is entitled to recover its actual damages and any profits of Defendants that are attributable to the infringement. In the alternative, CA is entitled to statutory damages pursuant to 17 U.S.C. § 504(c).

46. On information and belief, SS&C's conduct has been willful within the meaning of the Copyright Act. At a minimum, on information and belief, SS&C has acted with willful blindness to and in reckless disregard of CA's registered copyrights.

47. CA also requests recovery of its full costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

## COUNT IV
### Breach of Contract
### (Against DST)

48. CA realleges and incorporates by reference all foregoing allegations of its Complaint as if fully set forth herein.

49. The March 2022 Order Forms provide that DST's use of CA's software is subject to the terms and conditions of the 2021 Foundation Agreement. Moreover, CA is a third-party beneficiary of the March 2022 Order Form between DST and Sirius, which expressly provides "additional CA, Inc. terms for Customer."

50. Under the 2021 Foundation Agreement and March 2022 Order Forms, DST was permitted to use CA's software only up to the Authorized Use Limitation of 55,000 MIPS. Defendants' own usage reports show that DST has exceeded its Authorized Use Limitation of 55,000 MIPS by at least 49,561 MIPS consistently for more than two years.

51. Neither the March 2022 Order Forms nor the 2021 Foundation Agreement allow DST to exceed the Authorized Use Limitation to conduct disaster recovery testing.

52. While Section 3.1.3 of the Software Module attached to the 2021 Foundation Agreement does allow a customer to make a "a reasonable number of copies of the CA Software for disaster recovery 'cold standby', backup and archival purposes," it does not allow a customer to exceed the Authorized Use Limitation specified in a Transaction Document (*i.e.*, the March 2022 Order Forms) to do so. Indeed, in addition to the condition set forth in Section 3.1.1, Section 3.3(ii) provides that a Customer cannot "make any use of the CA Software for which it has not paid."

53. Moreover, even if DST had been allowed to exceed the Authorized Use Limitation for disaster recovery purposes, DST's purported disaster recovery testing did not comply with

Section 3.1.3 of the Software Module. "Cold standby" refers to a backup system that remains completely inactive and powered off until needed, only being activated when the primary system fails or during execution of a disaster recovery test. Rather than making a reasonable number of copies for "cold standby," however, DST has been running the CA software on four machines every month on a regular basis for over two years, and it has exceeded its Authorized Use Limitation of 55,000 MIPS in at least 13 out of 33 months. Computers capable of accessing, using, executing, or benefiting from the CA software are expressly subject to the requirement that the aggregate MIPS capacity shall not exceed the Authorized Use Limitation.

54. CA has performed its obligations under the 2021 Foundation Agreement and the March 2022 Order Forms.

55. DST's unauthorized use of CA's software without payment and its noncompliant disaster recovery testing are in direct contravention to and material breaches of the 2021 Foundation Agreement and March 2022 Order Form between DST and Sirius.

56. As a result of DST's material breaches, refusal to cease its unauthorized use and disaster recovery testing, and refusal to pay for its noncompliant disaster recovery testing, CA seeks compensatory damages in an amount to be proven at trial.

### COUNT V
**Breach of the Implied Covenant of Good Faith and Fair Dealing**
**(Against DST)**

57. CA realleges and incorporates by reference all foregoing allegations of its Complaint as if fully set forth herein.

58. The March 2022 Order Forms provide that DST's use of CA's software is subject to the terms and conditions of the 2021 Foundation Agreement.

59. CA has performed its obligations under the 2021 Foundation Agreement.

60. Section 3.1.3 of the Software Module attached to the 2021 Foundation Agreement allows a customer to make a "a reasonable number of copies of the CA Software for disaster recovery 'cold standby', backup and archival purposes." "Cold standby" refers to a backup system that remains completely inactive and powered off until needed, only being activated when the primary system fails or during execution of a disaster recovery test.

61. DST's purported disaster recovery testing was not conducted in good faith and prevented CA from receiving the benefits to which it was entitled under the contract. DST's disaster recovery was not reasonable. Rather, it has been running the CA software on four machines every month on a regular basis for over two years, and it has exceeded its Authorized Use Limitation of 55,000 MIPS in at least 13 out of 33 months.

62. DST's unreasonable and bad faith disaster recovery testing breaches the implied covenant of good faith and fair dealing.

63. As a result of DST's breaches, CA seeks compensatory damages in an amount to be proven at trial.

## **JURY TRIAL DEMANDED**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, CA demands a trial by jury on all issues triable as such.

## **PRAYER FOR RELIEF**

CA requests the following relief:

1. An injunction requiring Defendants to cease its unauthorized use of CA's software listed in Schedule A;

2. Compensatory damages to be proven at trial;

     3.     Actual damages and Defendants' profits attributable to the infringement under 17 U.S.C. § 504(b) or, in the alternative, statutory damages under 17 U.S.C. § 504(c);

     4.     Costs and reasonable attorney's fees under 17 U.S.C. § 505;

     5.     Judgment in favor of CA and against Defendants; and

     6.     All other relief, legal or injunctive, as the Court finds appropriate.

OF COUNSEL:

Alison L. Plessman (admission pending)
HUESTON HENNIGAN LLP
523 W. 6th St., Suite 400
Los Angeles, CA 90014
(213) 788-4340
aplessman@hueston.com

Dated: March 20, 2025

/s/ Rudolf Koch
Rudolf Koch (#4947)
Jason J. Rawnsley (#5379)
Gabriela Z. Monasterio (#7240)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
koch@rlf.com
rawnsley@rlf.com
monasterio@rlf.com

*Attorneys for Plaintiff*
*CA, Inc. d/b/a CA Technologies*